UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
                                                       :
LISA JETER,                                            :
                                                       :
                                        Plaintiff,     :
                                                       :          23-CV-7889 (VSB)
                     - against -                       :
                                                       :          **OPINION & ORDER**
MOUNT SINAI HEALTH SYSTEM,                             :
                                                       :
                                        Defendant.     :
                                                       :
---------------------------------------------------------X

Appearances:

Russell S. Moriarty
Levine & Blit, PLLC
Rye Brook, NY
*Counsel for Plaintiff*

Rory J. McEvoy
Brittany A. Buccellato
Akerman LLP
New York, NY
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

Plaintiff Lisa Jeter ("Plaintiff" or "Jeter") brings this action against her former employer,

Defendant Mount Sinai Health System ("Defendant" or "Mount Sinai"), after her employment as

a Registered Nurse was terminated for failing to get vaccinated against COVID-19.  Before me is

Defendant's motion to dismiss Plaintiff's gender, pregnancy, and disability discrimination

claims.  Because Plaintiff fails to state a claim, Defendant's motion to dismiss is GRANTED,

and this case is dismissed without prejudice.

### I.    __Factual Background__[1]

On August 26, 2021, the New York State Department of Health issued a regulation directing certain healthcare facilities to require their personnel to be fully vaccinated against COVID-19 if their personnel "engage[d] in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease."[2]  10 N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R") § 2.61(a)(2).[3]  The regulation provided for certain medical exemptions from the COVID-19 vaccine requirement, including an exemption "[i]f any licensed physician or certified nurse practitioner certifies that immunization with COVID-19 vaccine is detrimental to the health of member of a covered entity's personnel, based upon a pre-existing health condition, the requirements of this section relating to COVID-19 immunization shall be inapplicable only until such immunization is found no longer to be detrimental to such personnel member's health."  *Id.* § 2.61(d)(1).  The regulation further specified that "[t]he nature and duration of the medical exemption must be stated in the personnel employment medical record, or other appropriate record, and must be in accordance

---

[1] The facts set forth herein are taken from the allegations contained in the Complaint and the documents referenced therein.  (*See* Doc. 1 ("Complaint" or "Compl.").)  I assume Plaintiff's allegations in the Complaint to be true for purposes of this motion.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  However, my reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] Plaintiff does not dispute that her role as a Registered Nurse at Mount Sinai falls within the definition of covered "personnel" in New York State's COVID-19 mandate.  (*See* Doc. 11 ("Mem.") at 2 ("In her duties as a Registered Nurse, Jeter provided direct care for Mount Sinai's patients.  If she became infected with COVID-19, she would potentially expose those patients and other covered personnel to the virus while at work in the Hospital.  As a result, Jeter met the definition of personnel under Section 2.61."); *see generally* Doc. 13 ("Opposition" or "Opp'n").)

[3] "Courts may take judicial notice of agency rules and regulations." *Williams v. N.Y.C. Health & Hosps. Corp.*, No. 24-CV-5467, 2025 WL 1334667, at *2 n.2 (S.D.N.Y. May 7, 2025) (citing *U.S. v. Knauer*, 635 F. Supp. 2d 203, 206 n.2 (E.D.N.Y.) (collecting cases)).  "The Complaint does not mention [10 N.Y.C.R.R. §] 2.61, but the Court may take judicial notice of the emergency rule as a relevant matter of public record." *Riley v. N.Y.C. Health & Hosps. Corp.*, No. 22-CV-2736, 2023 WL 2118073, at *1 n.1 (S.D.N.Y. Feb. 17, 2023) (internal quotation marks omitted and alterations adopted); *see also Greenberg v. Visiting Nurse Servs. in Westchester, Inc.*, No. 23-CV-4252, 2024 WL 4252550, at *2 n.4 (S.D.N.Y. Sept. 19, 2024) ("The Court may take judicial notice of facts regarding COVID-19, including related rules and regulations." (internal quotation marks omitted and alterations adopted)).

with generally accepted medical standards, . . . and any reasonable accommodation may be granted and must likewise be documented in such record." *Id*.

In the summer of 2021, Mount Sinai imposed a COVID-19 vaccine mandate (the "Mandate") for its employees, and required its employees to "report their vaccination status . . . by on or around September 13, 2021, or face discipline up to termination." (Compl. ¶ 15.) Jeter worked as a Registered Nurse for Mount Sinai from 2015 to September 24, 2021. (*Id.* ¶ 12.) Jeter "suffered from significant disabilities related to reproductively [sic]" and "informed [D]efendant that she suffered from serious obstetrical and reproductive issues" at the time she sought a medical exemption to the Mandate. (*Id.* ¶¶ 14, 16–17.) Jeter did not get vaccinated because "[d]ue to her disabilities, [she] was ineligible for the [COVID-19] vaccine as per her physician." (*Id.* ¶ 16.)

"On or around August 23, 2021, Jeter informed [Mount Sinai] of her disabilities and requested a reasonable accommodation in the form of an exemption from the Mandate." (Compl. ¶ 16.) In her request for a medical exemption, Jeter said that she and her "doctor . . . are requesting a vaccination exemption, just to hold off on further increasing [her] lymphocyte count during this time . . . until [they] can resolve [her] current inflammatory complications" because "[t]he risk of an inflammatory adverse reaction, during this monitoring is of great concern." (*Id.* ¶ 18.) Jeter also "offered a reasonable alternative to her receiving the vaccine, stating, 'I have and will present with safe PPE (personal protective equipment) precautions and will gladly take part in weekly testing,' [and noted] the diligence and care to which she had approached constant exposure to Covid, 'as evidenced by working all year throughout Covid and being floated to Covid floors without ever getting Covid or antibodies.'" (*Id.* ¶ 19.) Jeter's request also included a supporting letter from her physician, "noting Jeter's necessary request for accommodation" and

concluding "that the vaccination at that time would further complicate and destabilize her health condition."[4]  (*Id.* ¶¶ 20–21.)

At the request of Mount Sinai, Jeter provided additional information to support her exemption request, including "supporting laboratory results."  (Compl. ¶ 22.)  On September 20, 2021, Mount Sinai "conditionally granted Jeter's accommodation request, but only for a seven (7) day period of time."  (*Id.* ¶ 24.)  On September 23, 2021, Mount Sinai denied Jeter's exemption request "by merely informing Jeter that her condition did not preclude her from receiving the Covid-19 vaccination."  (*Id.* ¶ 25.)  On September 24, 2021,[5] Mount Sinai terminated Plaintiff's employment.  (*Id*. ¶ 26.)

## II.      **Procedural History**

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 7, 2022.  (Compl. ¶ 10.)  She received a right-to-sue letter from the EEOC on July 26, 2023.  (*Id.*)

On September 6, 2023, Plaintiff filed the Complaint in this action.  (*See* Compl.)  The Complaint asserts claims for discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), (*id.* ¶¶ 36–43); the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296(1), (*id.* ¶¶ 44–51, 68–75); the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(1)(a), (*id.* ¶¶ 52–59, 76–83); and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq*., (*id.* ¶¶ 60–67).  Plaintiff seeks injunctive and

---

[4] Jeter has not filed her exemption request or the supporting letter from her physician on the docket in this case and the Complaint does not state whether either document specified what health condition Jeter suffered from at the time she requested an exemption.

[5] Defendant states that Jeter's employment was terminated on October 21, 2021.  (Mem. 1.)  Whether she was terminated on September 24, 2012 or October 21, 2021 does not change the outcome of the case.

declaratory relief against Defendant's alleged unlawful actions, compensatory damages, liquidated damages, punitive damages, and attorneys' fees and costs.  (*Id*. at 14–15.)

Defendant filed a motion to dismiss the Complaint for failure to state a claim on November 10, 2023, (Doc. 10), along with a supporting memorandum of law, (Doc. 11). Plaintiff filed her opposition on November 17, 2023.  (Doc. 13.)  Defendant filed its reply on November 30, 2023.  (Doc. 16 ("Reply").)

### III.    Legal Standard

"A motion to dismiss" for failure to state a claim "is designed to test the legal sufficiency of the complaint."  *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996) (internal quotation marks omitted).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead enough facts to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  This standard demands "more than a sheer possibility that a defendant has acted unlawfully."  *Id*. (citing *Twombly*, 550 U.S. at 557).  "Plausibility . . . depends on a host of considerations:  the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237.  A complaint need not make "detailed factual allegations," but it must

contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).

## IV.    Discussion

### A. *Title VII*

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). Courts in this Circuit analyze Title VII claims of employment discrimination under the three-stage, burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 792–93 (1973). *See Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010). Under *McDonnell Douglas*, "a plaintiff must first establish a *prima facie* case of discrimination by showing that: '(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015) (quoting *Weinstock v. Columbia Univ.,* 224 F.3d 33, 42 (2d Cir. 2000)); *see McDonnell Douglas*, 411 U.S. at 802. Because of the inherently elusive nature of intentional discrimination, a plaintiff must typically "rely on bits and pieces of information to support an inference of discrimination, *i.e.*, a mosaic of intentional discrimination." *Id.* at 86 (internal quotation marks

6

omitted).  "[A]t the initial stage of a litigation, the plaintiff's burden is minimal—[s]he need only

plausibly allege facts that provide at least minimal support for the proposition that the employer

was motivated by discriminatory intent."  *Id.* (internal quotation marks omitted).

Plaintiff alleges that Defendant discriminated against her based on her gender and

pregnancy.  (*See* Compl. ¶¶ 38, 40.)  As a threshold matter, Plaintiff does not allege any

circumstances that would plausibly give rise to an inference of gender discrimination because

Plaintiff fails to allege any specific facts suggesting gender animus.  However, Plaintiff does

allege that "[b]ut for Plaintiff being a female, and seeking pregnancy, and therefore a member of

a protected class pursuant to Title VII, plaintiff would not have been subjected to discrimination

based upon her gender and pregnancy," (*id*. ¶ 38), and that she was "discriminated against due to

her gender and pregnancy . . . as defendant forced plaintiff to choose between the vaccine and

keeping her job, or pregnancy; when plaintiff chose to protect her pregnancy, defendant

terminated plaintiff's employment; and, [] defendant terminated plaintiff because she chose to

safeguard her right and ability to become pregnant over the vaccine," (*id*. ¶ 40).  Plaintiff's

Opposition also states that "[p]ursuant to Title VII, . . . defendant's policy which affected

plaintiff directly due to her reproductive issues, certainly had a disparate impact on plaintiff due

to her gender and pregnancy."  (Opp'n 7.)  In essence, Plaintiff alleges that because her

vaccination exemption was denied and her employment was terminated, she was discriminated

against based on her gender and her intention or desire to get pregnant.  However, these

conclusory allegations do not plausibly allege a claim of discrimination because they do not

establish directly or indirectly that Mount Sinai discriminated against Plaintiff based on her

gender.  *See Mumin v. City of New York*, 760 F. Supp. 3d 28, 53–54 (S.D.N.Y. 2024) (finding

that the plaintiff could not establish her claim for gender discrimination through the "general,

conclusory allegations" that the defendants denied her vaccination exemption "because of their discriminatory animus directed against Plaintiff because of her gender" and that the defendants "subjected Plaintiff to the foregoing treatment because of their gender based animus directed against Plaintiff"); *Devita v. Mount Sinai Hosp.*, No. 22-CV-9826, 2024 WL 3046121, at *4 (S.D.N.Y. June 18, 2024) (finding that even if the plaintiff's "conclusory" allegation that the defendants denied her vaccination exemption status on the basis of her gender or pregnancy "were an accurate characterization of the allegation, . . . these non-specific references do not constitute invidious comments, or other such degrading remarks made in relation to Plaintiff's protected characteristic." (internal quotation marks omitted)); *Henry v. McDonald*, 531 F. Supp. 3d 573, 586 (E.D.N.Y. 2021) ("No one particular type of proof is required to support an inference of discrimination, but a plaintiff's mere subjective belief that he was discriminated against will not sustain a claim.").

"Further, Plaintiff[] do[es] not identify any similarly situated employees who were treated differently in a way that suggests that the timing of the Defendant's denial of [her] request was discriminatory." *Abramov v. Northwell Health Sys.*, No. 22-CV-06687, 2024 WL 4276171, at *6 (E.D.N.Y. Sept. 24, 2024), *aff'd sub nom*. *Braccia v. Northwell Health Sys.*, No. 24-2665-CV, 2025 WL 2610704 (2d Cir. Sept. 10, 2025) (summary order); *see also Salas v. N.Y.C. Dep't of Investigation*, 298 F. Supp. 3d 676, 688 (S.D.N.Y. 2018) ("To show that preferential treatment gives rise to an inference of discrimination, a plaintiff normally must allege that the relevant comparators were not members of the relevant 'protected group' and were treated less harshly despite being 'similarly situated' to the plaintiff."). In fact, Plaintiff does not even allege that Defendant differentiated between applicants for vaccination exemptions based on gender or pregnancy. *See Mumin*, 760 F. Supp. 3d at 55 (finding that the plaintiff failed to plead gender

8

discrimination under Title VII related to an exemption from the DOC's vaccine mandate because, among other reasons she "does not allege that the [defendant] differentiated between applicants for a religious accommodation based on gender"). Instead, Plaintiff appears to rely "heavily, in support of this claim and others, on the temporal proximity between the disclosure of [her obstetrical and reproductive issues] (through her exemption request), and the subsequent denial of the exemption request." *Devita*, 2024 WL 3046121, at *5. "That proximity alone, however, cannot transform her claim of discriminatory denial of relief from the COVID-19 vaccination requirement into a plausible one." *Id*.

Without any specific details that could give rise to a plausible inference of gender discrimination, Plaintiff's Title VII claim must fail, and Defendant's motion to dismiss Plaintiff's Title VII claim GRANTED.

### B. *ADA*

The ADA prohibits work-related discrimination "on the basis of disability." 42 U.S.C. § 12112(a). To state an ADA-discrimination claim, a plaintiff must show: "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of [her] disability or perceived disability." *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005); *see also Sharikov v. Philips Med. Sys. MR*, 103 F.4th 159, 166 (2d Cir. 2024). The parties do not dispute that Defendant is covered by the ADA, that Plaintiff was qualified to perform her role, or that she suffered at least one adverse action—the termination of her employment. Defendant argues that the Complaint fails to state an ADA-discrimination claim because Plaintiff does not sufficiently allege that she has a qualifying disability, and that

9

even if she had, she does not sufficiently allege that her purported disability caused Mount Sinai to terminate her employment or take any other adverse action against her.  (Mem. 5–8.)

### 1.  Disability

The first question is whether Plaintiff suffers from a qualifying disability within the meaning of the ADA.  The ADA defines "disability" as:  "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1).

The Complaint does not identify the nature of Plaintiff's disability other than to say that she "suffered from significant disabilities related to reproductively [sic]."  (Compl. ¶ 14; *see also id*. ¶ 17 (alleging that Plaintiff "suffered from serious obstetrical and reproductive issues"); *id.* ¶¶ 38, 46, 54 (alleging that Plaintiff was "seeking pregnancy").)  Plaintiff also asserts that she and her doctor "are requesting a vaccination exemption, just to hold off on further increasing [her] lymphocyte count during this time," that Plaintiff informed Defendant that "[t]he risk of an inflammatory adverse reaction, during this monitoring is of great concern," and that she and her doctor were "requesting medical exemption until [they could] resolve [her] current inflammatory complications."  (*Id.* ¶ 18.)  As an initial matter, "[i]t is well established that pregnancy alone does not constitute a disability."  *Tsepenyuk v. Fred Alger & Co.*, No. 18-CV-7092, 2022 WL 912882, at *7 (S.D.N.Y. Mar. 29, 2022), *aff'd*, 2023 WL 6173455 (2d Cir. Sept. 22, 2023) (summary order) (alteration adopted) (quoting *McMyler v. Bank of Utica*, No. 19-CV-812, 2021 WL 2778830, at *3 (N.D.N.Y. July 2, 2021)); *see also Minott v. Port Auth. of N.Y. & N.J.*, 116 F. Supp. 2d 513, 525 (S.D.N.Y. 2000) ("Every court to consider the question of whether pregnancy in and of itself is a 'disability' within the meaning of the ADA has concluded that it is not."); *Lehmuller v. Inc. Vill. of Sag Harbor*, 944 F. Supp. 1087, 1093 (E.D.N.Y. 1996), *on*

*reconsideration*, 982 F. Supp. 132 (E.D.N.Y. 1997) ("Courts have generally held that pregnancy and related medical conditions are not disabilities under the ADA.").

Plaintiff does not allege that she was pregnant and her allegations that she wanted to get pregnant, (*see* Compl. ¶¶ 38, 46, 54 (alleging that Plaintiff was "seeking pregnancy")), similarly do not plausibly allege a disability. While "[p]regnancy complications, [] sometimes can constitute a disability, . . . Plaintiff does not state whether she had complications with her pregnancy or other medical conditions related to her pregnancy that could constitute a 'disability' under federal law." *Morales v. N.Y. & Presbyterian Hosp.*, No. 18-CV-9711, 2019 WL 8989858, at *11 (S.D.N.Y. Nov. 20, 2019), *report and recommendation adopted sub nom.*, 2020 WL 1150136 (S.D.N.Y. Mar. 10, 2020); *see also Cooke v. Berkshire Farm Ctr. & Servs. for Youth*, No. 11-CV-2970, 2012 WL 668612, at *5 (E.D.N.Y. Feb. 29, 2012) ("Although complications from pregnancy may qualify as a disability in extremely rare circumstances, courts have generally held that such complications do not create a disability for purposes of the ADA." (internal quotation marks omitted)). Jeter alleges that she was "seeking pregnancy," (Compl. ¶¶ 38, 46, 54), that "becoming pregnant and having a healthy pregnancy was most certainly a legitimate priority," (*id.* ¶ 32), and that she "chose to safeguard her right and ability to become pregnant over the vaccine," (*id.* ¶¶ 40, 48, 56). However, Jeter does not state a specific medical diagnosis for her "serious obstetrical and reproductive issues," (*id.* ¶ 17), or claim that she has medical records documenting any such condition. Although Jeter references her "lymphocyte count," that she was at risk "of an inflammatory adverse reaction," and that she had "inflammatory complications," (*id.* ¶ 18), she does not identify her impairment or indicate how her purported impairment is tied to her attempting to get pregnant. Jeter also does not establish that she became pregnant or "had any additional complications that would qualify her pregnancy

11

under the ADA, nor is there any evidence that Defendant[] [was] aware of such complications" prior to Jeter's vaccination exemption request. *Tsepenyuk*, 2022 WL 912882, at *8.

However, even if Jeter did establish that she suffered from a disability within the ADA, that would not end the inquiry because "[t]o qualify as disabled, plaintiff must demonstrate that her impairment substantially limits a major life activity." *Montgomery v. Chertoff*, No. 03-CV-5387, 2007 WL 1233551, at *5 (E.D.N.Y. Apr. 25, 2007); *Capobianco*, 422 F.3d at 56 ("Not every impairment is a 'disability' within the meaning of the ADA; rather, there are two requirements:  the impairment must limit a major life activity and the limitation must be substantial.").  "It is 'well-established that an impairment does not significantly restrict a major life activity if it results only in mild limitations.'" *Langella v. Mahopac Cent. Sch. Dist.*, No. 18-CV-10023, 2023 WL 2529780, at *3 (S.D.N.Y. Mar. 15, 2023) (quoting *Collins v. Giving Back Fund*, No. 18-CV-8812, 2019 WL 3564578, at *13 (S.D.N.Y. Aug. 6, 2019)).  "Moreover, it is not enough for a plaintiff to only 'allude to her [] impairments in her [] pleadings; she [] must plead how those impairments significantly impacted her [] major life activities.'" *Id*. (quoting *Collins*, 2019 WL 3564578, at *13) (alterations adopted); *see also Abramov v. Northwell Health Sys*., 2024 WL 4276171, at *9 ("In determining whether a major life activity is substantially limited by a physical or mental impairment, courts consider (1) the nature and severity of the impairment, (2) its duration or expected duration; and (3) the existence of any actual or expected permanent or long-term impact." (internal quotation marks omitted)); *Papaliberios v. Mount Sinai Health Sys., Inc*., No. 23-CV-8661, 2025 WL 964114, at *3 (E.D.N.Y. Mar. 31, 2025) (finding that a nurse that alleged her medical exemption request was predicated on diagnosed fertility issues did not adequately allege a disability because "superficially alleging 'fertility issues' is not enough" and a "plaintiff still must allege facts illustrating how obstacles to fertility

12

impaired the major life activity of reproduction"). EEOC regulations, which I may consider in deciding the instant motion, *see Zuckerman v. GW Acquisition LLC*, No. 20-CV-8742, 2021 WL 4267815, at *10–11 (S.D.N.Y. Sept. 20, 2021) (discussing the EEOC's regulations on a motion to dismiss a discrimination claim under the ADA); *Robles v. Medisys Health Network, Inc.*, No. 19-CV-6551, 2020 WL 3403191, at *5–6 (E.D.N.Y. June 19, 2020) (same), state that "major life activities include, but are not limited to, 'caring for oneself, performing manual tasks, sleeping, concentrating, thinking, communicating, interacting with others, and working,'" *Zuckerman*, 2021 WL 4267815, at *10 (quoting 29 C.F.R. § 1630.2(i)(1)(i)) (alterations adopted). The EEOC regulations also explain that whether an impairment "substantially limits" an individual's major life activity is relative to "most people in the general population." *Id*. (quoting 29 C.F.R. § 1630.2(j)(1)(ii)).

Even if Plaintiff did establish that she suffered from a disability covered by the ADA, which she does not, the Complaint fails to plausibly allege that Jeter's "significant disabilities related to reproductively [sic]," (Compl. ¶ 14), substantially limited any major life activity. As an initial matter, Plaintiff does not identify any life activities which have been limited. Moreover, her conclusory assertions that her "professional goals and growth have been implicated, personal finances have been impacted, and emotional health has suffered," (*id.* ¶ 35), that "[t]he statutes clearly recognize a woman's ability to reproduce as a major bodily function and major life activity," (Opp'n 5), and that Defendant's policy "affected plaintiff directly due to her reproductive issues," (*id.* at 7), are unsupported by any "factual allegations to support the conclusion that her impairment substantially limited major life activities," *Zuckerman*, 2021 WL 4267815, at *11 (citing *Laface v. E. Suffolk BOCES*, No. 18-CV-1314, 2020 WL 2489774, at *11 (E.D.N.Y. May 14, 2020)). In other words, it would not even be enough for Plaintiff to plead

that her "reproductive and pregnancy issues" affected her, (Opp'n 4); instead, she would have to

plead facts that support that her "major life activities are substantially limited by reason of [her]

disabilities," *Perros v. Cnty. of Nassau*, 238 F. Supp. 3d 395, 402 (E.D.N.Y. 2017); *see also Sam-*

*Sekur v. Whitmore Grp., Ltd.*, No. 11-CV-4938, 2012 WL 2244325, at *8 (E.D.N.Y. June 15,

2012) (determining that the plaintiff's pregnancy did not render her disabled under the ADA

because she did "not sufficiently allege[] any physiological impairments as a consequence of her

pregnancy that have rendered her disabled" or that she had "an impairment" because

"[p]regnancy by itself . . . is not considered an impairment").  Plaintiff has failed to identify her

alleged disability and has not alleged any facts to suggest that she suffers from a physical

impairment that substantially limits a major life activity from which a disability could be

inferred.  "Significantly, with or without the existence or disclosure of a disability, she performed

the essential functions of a Registered Nurse for [six] years prior to the implementation of

[Mount Sinai's] COVID-19 vaccination policy and the adoption of the Statewide Mandate,

which also cuts against the plausibility of her disability claim." *Devita*, 2024 WL 3046121, at

*7.  Therefore, Plaintiff fails to demonstrate why her reproductive and pregnancy issues should

be considered a disability within the meaning of the ADA.

### 2.  Adverse Action Because of Disability

Although Plaintiff's discrimination claim must be dismissed because she fails to

plausibly allege that she is disabled within the meaning of the ADA or was perceived to be so by

Defendant, I will also analyze whether the Complaint plausibly alleges facts from which I may

infer that Mount Sinai took an adverse action against her "because of" her disability, or Mount

Sinai's perception of her disability.  *Capobianco*, 422 F.3d at 56.  At the motion to dismiss stage,

this is a "very lenient" pleading requirement.  *Rodriguez v. Verizon Telecom*, No. 13-CV-6969,

14

2014 WL 6807834, at *6 (S.D.N.Y. Dec. 3, 2014).  Plaintiff need only set forth "factual circumstances from which a discriminatory motivation can be inferred," such as differences in treatment or "the timing or sequence of events leading to the plaintiff's termination."  *Id.* (internal quotation marks omitted).  Plaintiff attempts to do so by alleging that her employment was terminated shortly after Defendant's failure to accommodate her vaccination exemption request.  However, Plaintiff fails to allege any facts to plausibly suggest that Defendant's failure to provide a vaccination exemption or terminating Plaintiff's employment were based on her alleged disability.

a.   Failure to Accommodate

Plaintiff sought an exemption to continue working onsite with Mount Sinai patients while unvaccinated—promising to "present with safe PPE (personal protective equipment) precautions" and "take part in weekly testing," (Compl. ¶ 19)—and appears to argue that Defendant's failure to provide her the vaccination exemption was an adverse action taken because of Plaintiff's purported disability.  (*See id*. ¶ 26 ("[D]efendant terminated Jeter's employment for no legitimate, nondiscriminatory reason, after denying Jeter's reasonable accommodation request without entering into a legitimate interactive process and without a legitimate, nondiscriminatory justification for doing so."); *id.* ¶ 33 ("Defendant's position of essentially forcing Jeter to forego pregnancy to keep her job placed Jeter in an untenable and unlawful position - having to choose between taking the vaccine and working, on the one hand, or pregnancy, on the other hand.").)  Plaintiff's assertion that she requested a reasonable accommodation is misguided.

First, Plaintiff fails to sufficiently plead that she requested a reasonable accommodation and was denied an accommodation.  "On the issue of reasonable accommodation, the plaintiff

15

bears only the burden of identifying an accommodation, the costs of which, facially, do not clearly exceed its benefits." *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 139 (2d Cir. 1995); *see also McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 n.3 (2d Cir. 2009) ("[W]ith regard to the reasonableness of a proposed accommodation, a plaintiff bears only a light burden of production that is satisfied if the costs of the accommodation do not on their face obviously exceed the benefits"). "A reasonable accommodation is one that 'enable[s] an individual with a disability who is qualified to perform the essential functions of that position . . . [or] to enjoy equal benefits and privileges of employment.'" *Novick v. Vill. of Wappingers Falls, N.Y.*, 376 F. Supp. 3d 318, 337 (S.D.N.Y. 2019) (quoting 29 C.F.R. §§ 1630.2). "Even if a plaintiff can establish a *prima facie* case, 'an employer does not violate Title VII . . . if it can show that the prospective accommodation 'would cause the employer to suffer an undue hardship.'" *Haczynska v. Mount Sinai Health Sys., Inc.*, No. 23-CV-3091, 2025 WL 1384133, at *10 (E.D.N.Y. May 13, 2025) (quoting *D'Cunha v. Northwell Health Sys.*, No. 23-476, 2023 WL 7986441, at *2 (2d Cir. Nov. 17, 2023) (summary order) (alterations adopted)).

The Mandate permitted medical exemptions only, (Mem. 1–2 ("Hospital personnel were exempt from the vaccine requirement only if COVID-19 immunization was detrimental to their health." (citing 10 N.Y.C.R.R. §2.61(d)(1))), and Mount Sinai's Medical Exemption Committee determined that Plaintiff did not qualify for a medical exemption because her purported disability was not one of the narrow contraindications for receiving the COVID-19 vaccine,[6] (*see id*. at 2, 7–9.) Plaintiff, a Registered Nurse, does not dispute that she "worked in a patient-facing position that could not be performed remotely," (*id.* at 1), nor did her exemption request include an offer

---

[6] Although Plaintiff alleges that her physician determined that she had a "necessary request for accommodation" and "her doctor concluded that the vaccination at that time would further complicate and destabilize her health condition," (Compl. ¶¶ 20–21), Plaintiff does not plead that the physician determined that her conditions were contraindications for the COVID-19 vaccine.

16

to work remotely, (*see* Compl. ¶ 19 (offering to "present with safe PPE (personal protective equipment) precautions" and "take part in weekly testing")). Thus, Defendant could not exempt Plaintiff from Section 2.61's definition of "personnel," defined as employees "who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease." 10 N.Y.C.R.R. § 2.61(a)(2). Therefore, Mount Sinai, having determined that Plaintiff did not qualify for a medical exemption, would have had to violate New York State law to grant Plaintiff's accommodation request. *See Ravenell v. Maimonides Med. Ctr.*, No. 23-CV-2320, 2025 U.S. Dist. LEXIS 153714,at *21–22 (E.D.N.Y. Aug. 8, 2025) (determining that plaintiff, a patient-facing radiation therapist, did not plead "facts sufficient to show her entitlement to the medical exemption" and thus the "Defendant would have been unable to grant her medical exemption and accommodate her to enable her to perform the essential functions of her position without violating the Regulation," 10 NYCRR § 2.61), *report and recommendation adopted* (Sept. 18, 2025). Moreover, "Plaintiff's alternative proposed accommodations, namely [PPE and] testing[,] . . . would have placed Defendant in violation of the [New York State law] for employing unvaccinated 'personnel' and therefore also would have been unreasonable." *Id.* at *22 n.14.

Second, the allegations in the Complaint do not plausibly suggest a causal link between the termination of Plaintiff's employment and her purported disability. To state a failure to accommodate claim, "Plaintiff must plead sufficient facts to raise the inference 'that [an employer's] failure [to provide a reasonable accommodation] was motivated by discriminatory intent.'" *Novick*, 376 F. Supp. 3d at 336–37 (quoting *Lyman v. City of New York*, No. 01-CV-3789, 2003 WL 22171518, at *6 (S.D.N.Y. Sept. 19, 2003)). Plaintiff pleads that around the time that she requested the exemption from the Mandate in August 2021, she "informed defendant

17

that she suffered from serious obstetrical and reproductive issues," (Compl. ¶ 17), and provided more information to Defendant in September 2021 "[i]n response to an inquiry from defendant for more information regarding her accommodation request," (*id*. ¶ 22).  Thus, Defendant did not learn of Plaintiff's alleged disability until Plaintiff sought an exemption from the Mandate.  In other words, the Mandate itself could not form a basis for a determination of discriminatory intent.  Plaintiff states that Defendant's denial of her exemption request "[d]isregard[ed] the need for accommodation due to Jeter's serious obstetrical and reproductive issues . . . [and] merely inform[ed] Jeter that her condition did not preclude her from receiving the Covid-19 vaccination, despite the fact that Jeter's own physician certified that Jeter should not receive the vaccine as a necessary precaution."  (*Id*. ¶ 25.)  However, Defendant states that its Medical Exemption Committee—"whose sole function was to evaluate exemption requests to the COVID-19 vaccine policy and who carefully evaluated Jeter's request"—denied Plaintiff's request for an exemption "because her condition did not preclude her from receiving the COVID-19 vaccine."  (Mem. 2, 7.)  Defendant asserts that Plaintiff "did not qualify for a medical exemption" because "[t]he only COVID-19 vaccination contraindication recognized by the Centers for Disease Control and Prevention . . . [was] a history of a severe allergic reaction . . . after a previous dose or to a component of the COVID-19 vaccine" and Plaintiff made "no claim that she had a history of a severe allergic reaction to the COVID-19 vaccine or one of its components."  (*Id.* at 8–9 (internal quotations omitted and alteration adopted).)  Plaintiff does not allege that she met this narrow basis for an exemption to the Mandate, nor does she allege facts sufficient to plausibly allege that the exemption denial was motivated by Defendant's discriminatory intent.

Plaintiff's allegation—a single sentence claiming that Defendant "[d]isregard[ed] the need for accommodation due to Jeter's serious obstetrical and reproductive issues . . . despite the

18

fact that Jeter's own physician certified that Jeter should not receive the vaccine as a necessary precaution," (Compl. ¶ 25)—does not establish any causal connection between her alleged disability and Defendant's failure to accommodate her exemption request.

### b.  Termination of Employment

Nor has Plaintiff plausibly alleged a discriminatory motive for the termination of her employment.  Plaintiff pleads that Defendant terminated her employment "for no legitimate, nondiscriminatory reason, after denying [her] reasonable accommodation request without entering into a legitimate interactive process and without a legitimate, nondiscriminatory justification for doing so."  (Compl. ¶ 26.)  Defendant, however, states that "[t]he denial of Plaintiff's request for a medical exemption by an interdisciplinary committee of medical professionals and Jeter's subsequent refusal to be vaccinated, as required by the Mandate and Hospital policy, is the sole reason why she was terminated, not because of any medical condition."  (Mem. 7–8; *see also id.* at 11 ("[T]he sole reason for Plaintiff's termination was her refusal to be vaccinated as required by the Mandate and Hospital policy and not because of her gender, including her ability to become pregnant, or for any other reason.").)

Contrary to Plaintiff's contention that the termination of her employment was based on disability animus, Plaintiff "was expressly warned—along with all other [Mount Sinai] employees—that noncompliance with the [] Mandate would result in these precise consequences."  *Grimes v. N.Y. & Presbyterian Hosp.*, No. 23-CV-652, 2024 WL 816208, at *10 (S.D.N.Y. Feb. 26, 2024).  Defendant implemented the Mandate on August 20, 2021 and warned that "employees still unvaccinated by September 27, 2021 would be terminated."  (Mem. 2.)  Three days later, on August 23, 2021, Plaintiff "informed respondent of her disabilities and requested a reasonable accommodation in the form of an exemption from the Mandate."

19

(Compl. ¶ 16.)  Accordingly, the Mandate was enacted before Plaintiff informed Defendant about her purported disability and therefore it is not reasonable to infer that there was a causal connection between her alleged disability and the termination of her employment.  As the Second Circuit stated in *Kosiba v. Cath. Health Sys. of Long Island, Inc.*:

> [Plaintiff] fails to allege the required causal connection between [her purported disability] . . . and [her] termination.  [Defendant] announced that covered employees who refused to be vaccinated would be . . . terminated . . . three days before [Plaintiff] complained about [Defendant's] policy.  Thus, rather than show [Plaintiff] was terminated because of [her] protected activity, the allegations in the Complaint make clear that [s]he was fired because of [her] failure to comply with the company-wide vaccine policy.  And because the policy applied to all employees, [Plaintiff] has not plausibly pleaded a connection between [her] invocations of the ADA and [her] termination.

No. 23-6, 2024 WL 3024652, at *2 (2d Cir. June 17, 2024) (summary order) (internal quotation marks omitted); *see also Evans v. N.Y.C. Dep't of Educ.*, No. 22-CV-7901, 2023 WL 8034449, at *8–9 (S.D.N.Y. Nov. 20, 2023) (dismissing ADA retaliation claim where the plaintiff failed to show a "causal connection between" his termination and protected activity because the "COVID policy applied to all employees and [the plaintiff's] own pleadings showed he was disciplined as a consequence of the refusal to comply with the policy, rather than as retaliation for opposition to it"); *Johnson v. Mount Sinai Hosp. Grp., Inc.*, No. 22-CV-2936, 2023 WL 2163774, at *7 (E.D.N.Y. Feb. 22, 2023), *motion for relief from judgment denied*, 2023 WL 3159233 (E.D.N.Y. Apr. 28, 2023), and *aff'd*, No. 23-466, 2024 WL 3289475 (2d Cir. July 3, 2024) (summary order) (dismissing ADA retaliation claim where the plaintiff failed to "sufficiently allege[] a causal connection between the so-called 'protected activity'" in opposing the vaccination requirement and her termination because Mount Sinai announced the policy in July 2021 and she did not complain about the policy "until the end of August").

20

Plaintiff fails to allege that but for her alleged disability, she would not have been fired. Instead, the allegations in the Complaint make clear that Plaintiff was terminated for a legitimate, non-discriminatory reason: because she refused to comply with the Mandate after not receiving an exemption. *See Sharikov*, 103 F.4th at 171 ("Rather than show [that the plaintiff] was terminated because of his protected activity, the allegations in the Complaint make clear that he was fired because of his failure to comply with the company-wide vaccine policy. Because the policy applied to all employees regardless of whether they had engaged in protected activity, [the plaintiff] has not plausibly pleaded a connection between his invocations of the ADA and his termination."); *see also Devita*, 2024 WL 3046121, at *5 ("[T]he SAC lacks even the minimal factual support required at the motion to dismiss stage for her contention that Plaintiff was placed on unpaid leave and ultimately terminated due to her sex or pregnancy status, rather than due her status as an unvaccinated registered nurse."). Indeed, Plaintiff's "own allegations establish that even if [she] had not requested an accom[m]odation . . . , she still would have been terminated based on her failure to get vaccinated." *Grimes*, 2024 WL 816208, at *10; *see* Compl. ¶ 15 ("The Mandate required employees such as Jeter to be vaccinated for Covid-19, and to report their vaccination status to respondent by on or around September 13, 2021, or face discipline up to termination.").

In sum, Plaintiff has not alleged that she suffered a qualifying disability under the ADA, or that her employer took an adverse action against her because of its perception of her alleged disability. Defendant's motion to dismiss the ADA disability-discrimination claim is GRANTED.

### C. *State Law NYSHRL and NYCHRL Claims*

21

Having dismissed Plaintiff's Title VII and ADA claims, the only claims over which I had original jurisdiction, the only claims that remain are state-law claims under the NYSHRL and NYCHRL.  I do not have original jurisdiction over these claims, and I have discretion under 28 U.S.C. § 1367(c)(3) to decline to exercise supplemental jurisdiction over them.  Whether to exercise supplemental jurisdiction "is within the sound discretion of the district court."  *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 117 (2d Cir. 2013) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349–50 (1988)).  In considering whether to exercise supplemental jurisdiction over the remaining claims, I "must consider 'the values of judicial economy, convenience, fairness, and comity.'"  *Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 102 (2d Cir. 2014) (quoting *Cohill*, 484 U.S. at 350).  "In weighing these factors, the district court is aided by the Supreme Court's additional guidance in *Cohill* that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'"  *Kolari v. N.Y.- Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Cohill*, 484 U.S. at 350 n.7)).  Indeed, "[c]ourts in this District routinely decline to exercise supplemental jurisdiction over a plaintiff's state law claims, including NYCHRL claims and common law torts, after dismissing all federal claims."  *Braunstein v. Sahara Plaza, LLC*, No. 16-CV-8879, 2021 WL 2650369, at *19 (S.D.N.Y. June 28, 2021) (collecting cases).

Here, judicial economy weighs in favor of dismissal of the state law claims—the case is still in a "relatively early stage," as no discovery has taken place and the case is "not yet ready for trial."  *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003).  Although "the state-law issues [are] not so groundbreaking as to preclude the exercise of jurisdiction" under 28 U.S.C. § 1367(c)(1), *Kroshnyi*, 771 F.3d at 102, the consideration of comity also weighs in favor

of dismissal, because dismissal avoids "[n]eedless" federal-court "decisions of state law,"

*Valencia*, 316 F.3d at 305 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

Ordinarily, pursuant to 28 U.S.C. 1367(c), when "a plaintiff's federal claims are dismissed

before trial, 'the state claims should be dismissed as well.'" *Brzak v. United Nations*, 597 F.3d

107, 113–14 (2d Cir. 2010) (quoting *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240,

250 (2d Cir. 2008)).  Thus, I decline to exercise supplemental jurisdiction over the remaining

state law claims, and they are DISMISSED without prejudice.

## V.    **Conclusion**

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.  Plaintiff may

seek leave to file an amended complaint no later than 30 days after this Opinion & Order.  Any

motion for leave to file must be captioned "Application Pursuant to Court Order Seeking Leave

to File" and Plaintiff must attach a copy of her proposed complaint with any such motion.  If

Plaintiff fails to file a motion for leave to file an amended complaint by that date, I will direct the

Clerk of Court to close the case.

The Clerk of Court is respectfully directed to terminate the pending motion at Doc. 10.

SO ORDERED.

Dated: March 25, 2026
       New York, New York

_____
Vernon S. Broderick
United States District Judge